OPINION *Page 2 
{¶ 1} Appellant, Shanna Zobel, appeals the January 18, 2007 and February 16, 2007 judgment entries of the Tuscarawas County Court of Common Pleas, Juvenile Division, finding Tuscarawas County had proper venue in terminating her parental rights with respect to her minor daughter, Pantasha Zobel ("Pantash"), and granting permanent custody to Appellee Tuscarawas County Job and Family Services.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 10, 2006, Pantasha was born to appellant at Aultman Hospital in Stark County. No father has been legally established for Pantasha. Appellant tested positive for cocaine at Pantasha's birth, as did Pantasha.
 {¶ 3} On June 19, 2006, appellant's older child, Jayvien Zobel ("Jayvien"), was placed in the permanent custody of Tuscarawas County Job and Family Services ("TCJFS") in Case No. 05JN00186. Appellant did not appear at the dispositional hearing. The trial court found that appellant had failed to comply with any of the provision of the case plan in regards to Javien.
 {¶ 4} On December 14, 2006, the Tuscarawas Juvenile Court issued an ex parte order for TCJFS to remove Pantasha from the custody of appellant. The order was based upon the trial court's belief that "Shanna Zobel and the child are homeless; and Shanna Zobel is reportedly using illegal drugs and is in the company of persons involved in illegal activity".
 {¶ 5} TCJFS had credible information that appellant was residing at the home of her mother at 318 East Fifth Street, Uhrichsville, Ohio, located in Tuscarawas County. However, TCJFS was unable to locate appellant and her daughter. *Page 3 
 {¶ 6} On December 19, 2006, TCJFS received information that appellant and her daughter were at 7312 Roswell Road, Sherrodsville, Ohio, in Carroll County. TCJFS requested the assistance of the Carroll County Job and Family Services. An employee of the Carroll County Job and Family Services and a Carroll County Sheriff's deputy affected the order of the Tuscarawas County Juvenile Court and removed the daughter from the custody of appellant.
 {¶ 7} On December 20, 2006, TCJFS filed its complaint for neglect and dependency. The same day, the Tuscarawas County Juvenile Court held a shelter care hearing. At this hearing, appellant informed the court that Tuscarawas County was improper venue for the case. Appellant denied living in Tuscarawas County at any time preceding the filing of the complaint. At the conclusion of the hearing, the trial court ordered appellant to undergo a drug test. Officers of the Juvenile Probation Department conducted a drug test. Appellant tested positive for marijuana, cocaine and amphetamines. The trial court ordered appellant to report immediately for a hair and urine screen. Appellant submitted hair but was unable to produce an adequate amount of urine to test. Appellant refused to wait and left the testing facility.
 {¶ 8} At the conclusion of the shelter care hearing, the trial court found probable cause for the neglect and dependency complaint and placed the child in the temporary custody of TCJFS.
 {¶ 9} On January 3, 2007, the trial court held an initial hearing. Appellant entered a plea of denial to the complaint. At time, she also was arrested and spent a week in jail, apparently for not completing the terms of an earlier, unspecified criminal sentence. *Page 4 
 {¶ 10} On January 12, 2007, appellant filed a Motion Dismiss based on improper venue. On the same date, TCJFS filed a response to the motion asking that the motion be held in abeyance pending the outcome of the evidence presented at trial. TCJFS asserted that it was required to prove jurisdiction and venue at the adjudicatory hearing.
 {¶ 11} On January 17, 2007, the trial court held an adjudicatory hearing. At the conclusion of the hearing, the trial court denied the Motion to Dismiss and found Tuscarawas County had proper venue. The trial court cited a belief that appellant was "dodging everybody that might interfere with [her] life the way [she wants] to live it." January 17, 2007 T. at 116. Further, the trial court found the child to be dependent and neglected. The trial court held that Pantasha "shall remain in the temporary custody of the TCJFS under the previous orders of the Court". The trial court memorialized this via Judgment Entry dated January 18, 2007.
 {¶ 12} On January 22, 2007, appellant appealed this decision and requested a stay. This Court denied the appeal finding that the denial of the Motion to Dismiss was not a final appealable order.
 {¶ 13} On February 15, 2007, the trial court held a dispositional hearing. TCJFS requested that the trial court find it did not need to expend reasonable efforts to reunify the child with appellant pursuant to R.C. § 2151.419. TCJFS filed a certified copy granting permanent custody of Jayvien Zobel to TCJFS. The trial court found that TCJFS did not need to expend reasonable efforts for reunification. The trial court then held the dispositional hearing.
 {¶ 14} On February 16, 2007, the trial court issued a Judgment Entry awarding permanent custody of Pantasha to TCJFS. *Page 5 
 {¶ 15} On February 27, 2007, appellant timely appealed raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 16} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT HEREIN, IN DENYING APPELLANTS' [SIC] MOTION TO DISMISS THE COMPLAINT FOR IMPROPER VENUE.
 {¶ 17} "II. THERE WAS NOT CLEAR AND CONVINCING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILD SHOULD NOT BE PLACED WITH THE APPELLANT AND THAT IT WAS IN THE MINOR CHILD'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF TUSCARAWAS COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES.
 {¶ 18} This appeal is expedited and is being considered pursuant to App. R. 11.2(C).
 I. {¶ 19} In her first assignment of error, appellant challenges the trial court's decision to deny a Motion to Dismiss based on improper venue. Appellant argues that she did not reside at any time in Tuscarawas County.
 {¶ 20} R.C. 2151.27(A)(1) and Juvenile Rule 10(A) provide that any person having knowledge of a child who appears to be an unruly, abused, neglected, or dependent child may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement or in which the violation, unruliness, abuse, neglect, or dependency occurred. R.C. 2151.06 further *Page 6 
provides that "a child has the same residence or legal settlement as his parents, legal guardian of his person, or his custodian who stands in the relation of loco parentis."
 {¶ 21} Appellant cites State ex. rel. Burchett v. Juvenile Court forScioto County (1962), 194 N.E.2d 912, 92 Ohio Law Abs. 357 for the proposition that when a child is moved from his or her resident county to another county, and a complaint is immediately filed in the non-resident county, that county does not have venue if neither the child nor its parents reside there and none of the facts underlying the complaint occurred there.
 {¶ 22} This Court finds Burchett distinguishable. InBurchett, the father resided in Madison County, Ohio. The wife left and set up a separate residence in Union County, Ohio leaving two minor children in the custody of the father. One evening, while father was at work, the wife took the two minor children and spent the night in Scioto County in a motel. The following morning the wife appeared in Scioto County Juvenile Court alleging the children dependent. The trial court found that one night in a motel did not meet the requirement for residency.
 {¶ 23} A more relevant case is In the Matter of: Ford McLean, etal., 11th Dist. No. 2005-T-0018, 2005-Ohio-2576. InMcLean, the parents of four minor children owned property or had resident addresses in Mahoning County, Ohio; Trumbull County, Ohio; and Armstrong County, Pennsylvania. Trumbull County Children's Services became involved with the family due to allegations of poor home conditions, poor hygiene, domestic violence, missed medical appointments and lack of stable housing. Children's Services had difficulty contacting the family and received information that the family had moved to Armstrong County. Children's Services contacted Armstrong Children's *Page 7 
Services, but that agency could not locate the family. The father appeared in Trumbull County to meet his probation officer. Law enforcement reported the unclean condition of the children to Trumbull County Children's Services. That agency took emergency custody of the children. At the permanent custody hearing, the father argued the court lacked jurisdiction. The court held that the mere fact that the family had residences in other counties and were "habitually transient" did not defeat jurisdiction. "Where the acts constituting the neglect or dependency occur within the county of the court exercising jurisdiction, `it is immaterial whether the parent or minor child was a nonresident of the county in which the complaint was filed.'" In the Matter of: FordMcLean, et al., 11th Dist. No. 2005-T-0018,2005-Ohio-2576, citing In re Belk (1954), 97 Ohio App. 114,123 N.E.2d 757, at syllabus.
 {¶ 24} In this case, the evidence demonstrated appellant was "habitually transient" and further disbelieved appellant's testimony regarding her county of residence. In its Judgment Entry dated January 18, 2007, the trial court stated the following:
 {¶ 25} "4. At particular issue is whether or not TCJFS has been able to prove that Tuscarawas County is the proper venue for this case.
 {¶ 26} "5. Ms. Zobel now indicates that she has never resided in Tuscarawas County and that Carroll County is the proper venue for this action. The Court finds this argument to be without merit.
 {¶ 27} "6. In November 2006, Carroll County JFS received reports concerning the neglect of Pantasha Zobel. At first it was difficult to locate Shanna and the agency *Page 8 
was unable to find her at two separate addresses. It is clear that from time to time, she was staying with friends in that county.
 {¶ 28} "7. It is also clear that Shanna and Pantasha were taken by one of her friends to the home of her mother in Tuscarawas County. Shanna would like to convince the Court that this was only for a visit of one day, and she was never residing there.
 {¶ 29} "8. The records of Carroll County JFS contain information indicating to the contrary. This information was received by several individuals and her public assistance benefits were transferred to Tuscarawas County.
 {¶ 30} "9. Shanna never indicated that this was not the proper county from which she should receive benefits.
 {¶ 31} "10. This Court has had a long history with Shanna Zobel and she is well known to this finder of fact. Because this Court is so familiar with Shanna, the Court noticed behavior that was rather subtle but peculiar from the onset of this case.
 {¶ 32} "11. From the inception of this case Shanna has been unusually vocal concerning the issue of venue. Shanna was quick to put forth this argument on her own without counsel at the shelter care hearing. Shanna has become very skilled at moving from place to place when it suits her to avoid criminal or JFS involvement and she is skilled at avoiding any meaningful contact with any JFS agency.
 {¶ 33} "12. This Court finds that Shanna and her friends first indicated that Shanna was living in Tuscarawas County when the Carroll County agency was looking for her. The Court finds that she, in fact, was in Tuscarawas County because she felt that would insulate her from JFS proceedings. *Page 9 
 {¶ 34} "13. Since this Court acted to remove this child from her care, she and her friends now want to deny the previous information they gave to various individuals."
 {¶ 35} In addition, Danielle Triplett of the Carroll County Department of Job and Family Services testified that appellant transferred her public assistance benefits from Carroll County to Tuscarawas County on December 14, 2006. T. of January 17, 2007 at 57-58. This indicates residency in Tuscarawas County.
 {¶ 36} Based on the foregoing, this Court finds venue proper. Appellant's first assignment of error is overruled.
 II. {¶ 37} In her second assignment of error, appellant claims the trial court's decision to award permanent custody to TCJFS was not supported by clear and convincing evidence.
 {¶ 38} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279.
 {¶ 39} In its judgment entry of January 18, 2006, the trial court found the child to be dependent pursuant to R.C. 2151.04(D) which states the following:
 {¶ 40} "As used in this chapter, `dependent child' means any child:
 {¶ 41} "(D) To whom both of the following apply: *Page 10 
 {¶ 42} "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 {¶ 43} "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
 {¶ 44} The trial court based its decision on the following three facts:
 {¶ 45} "1. Pantasha is the daughter of Shanna Zobel. Shanna Zobel is 21 years old and already has had one child placed into the permanent custody of TCJFS.
 {¶ 46} "2. Shanna has a long juvenile record with this Court. At twenty-one, she has also established an extensive history of drug use and relationships with abusive, drug addicted men.
 {¶ 47} "3. Shanna tested positive for cocaine at the shelter care hearing and admitted repeated use at the instant hearing. Shanna never has a stable residence and moves from place to place. She is unemployed. During her testimony, Shanna admitted to the allegations in the complaint."
 {¶ 48} In granting permanent custody to appellee, the trial court found, "Pursuant to ORC 2151.419, the Court finds that TCJFS need not expend reasonable efforts to reunify Pantasha Zobel with Shanna Zobel." Judgment Entry dated February 16, 2007. This decision was based on the stipulated journal entry 05JN00186, which memorialized the permanent custody proceedings of appellant's older child, Jayvien. *Page 11 
 {¶ 49} The trial court heard testimony that appellant tested positive for drugs. January 17, 2007 T.at 8-10. The trial court also heard testimony that appellant does not have a stable residence and stays with different friends. T. at 44. Further, one of those friends, Ms. Carol Brosius, was Pantasha's sitter. She suffers from depression and attempted suicide by drug overdose in January, 2007. T. at 30.
 {¶ 50} Based on this evidence, the trial court's decision was supported by clear and convincing evidence.
 {¶ 51} Appellant's second assignment of error is overruled.
 {¶ 52} The decision of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed.
 Delaney, J., Farmer, P.J. and Wise, J. concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant. *Page 1