[Cite as *In re Z.R.*, 2014-Ohio-182.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: Z.R.

C.A. No. 26860

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 12-08-0561

DECISION AND JOURNAL ENTRY

Dated: January 22, 2014

HENSAL, Judge.

**{¶1}** Appellant, Latoiya R. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her youngest child dependent and placed her in the temporary custody of Summit County Children Services Board ("CSB"). Because the trial court erred by failing to dismiss the complaint, this Court reverses and remands.

I.

**{¶2}** Mother is the natural mother of six minor children. Five of her children were removed from her custody and adjudicated neglected and dependent children in separate Summit County cases. The only child at issue in this case is Mother's youngest, Z.R., born August 23, 2012 at a hospital in Cuyahoga County.

**{¶3}** The day after Z.R.'s birth, CSB filed a complaint in the juvenile court in Summit County. CSB alleged that Z.R. was a dependent child, based on facts that predated the birth of Z.R. involving the dependency and neglect cases of Mother's older children. Notably, it did not

allege that Mother resided in Summit County at that time or that she had engaged in any improper conduct toward Z.R. in Summit County. Instead, it alleged that Z.R. was born at a hospital in Cuyahoga County, that Mother had been evicted from her home in Akron and was staying with relatives in Cuyahoga County, and that it had been to the Cuyahoga County residence and found that it lacked a crib or supplies for a newborn baby.

{¶4} On September 5, 2012, Mother moved to dismiss the complaint, asserting that Summit County was not the proper venue for filing the complaint because it was not where Z.R. resided, nor was it the county where any alleged acts constituting the dependency occurred. *See* Juv.R. 10; R.C. 2151.27(A)(1). Specifically, Mother asserted that she had been living in Cuyahoga County for several months and that Z.R. had just been born at a hospital in Cuyahoga County.

{¶5} The next day, CSB moved the court to "designate the Cleveland Metropolitan School District to bear the cost of educating [Z.R.]," because, at the time Z.R. was removed from Mother's custody, Mother resided in Cleveland. *See* R.C. 2151.362; R.C. 3313.64(C)(2) (requiring that costs be paid by school district where child and parent resided at the time of removal). The trial court later issued an order that Cleveland bear the cost of educating Z.R. because "[M]other * * * resided [at a specific Cleveland address] at the time of [Z.R.'s] removal."

{¶6} CSB later responded in opposition to Mother's motion to dismiss the complaint. The agency did not dispute that Mother resided in Cuyahoga County at the time it filed its complaint, but argued that the complaint in this case was properly filed in Summit County because Mother had open cases pertaining to the older siblings of Z.R. and the agency was alleging that Z.R. was dependent based on the circumstances surrounding her siblings' cases. A

magistrate denied Mother's motion to dismiss the complaint and the matter proceeded to adjudicatory and dispositional hearings, after which Z.R. was adjudicated a dependent child and placed in the temporary custody of CSB.

{¶7} Mother filed timely objections to the magistrate's adjudicatory and dispositional decisions, which included that the magistrate improperly denied her motion to dismiss the complaint for improper venue. The trial court overruled all of Mother's objections, adjudicated Z.R. a dependent child, and placed her in the temporary custody of CSB. Mother appeals and raises six assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT DISMISSING THE CASE WHEN IT WAS FILED IMPROPERLY IN SUMMIT COUNTY.

{¶8} Mother's first assignment of error is that the trial court erred in failing to dismiss the complaint because Summit County was not a proper county in which to commence this action. The trial court ultimately concluded that, even if this case was filed in the wrong county, the appropriate remedy was to transfer the case to another county pursuant to Juvenile Rule 11 and R.C. 2151.271, not dismiss the complaint. For the reasons that follow, this Court disagrees with that reasoning.

{¶9} To begin with, the trial court mistakenly focused on the liberal venue requirements Civil Rule 3. Pursuant to Civil Rule 3(B), most civil cases "may be venued, commenced, and decided in any court in any county." *See, e.g.,* R.C. 3105.03 (explicitly providing that actions for divorce and annulment shall be brought in the proper county as

provided in the civil rules). The Juvenile Rules and R.C. Chapter 2151 provide more specific constraints on venue in abuse, neglect, and dependency cases, however.

{¶10} This Court has repeatedly emphasized that "[t]he trial court's authority in dependency and neglect cases is strictly governed by a comprehensive statutory scheme set forth in R.C. Chapter 2151." *In re N.G*, 9th Dist. Lorain No. 12 CA010143, 2012-Ohio-2825, ¶ 10, citing *In re I.S.,* 9th Dist. Summit No. 24763, 2009–Ohio–6432, ¶ 10. "The appropriate way to invoke the jurisdiction of the juvenile court is by the filing of a complaint." *In re D.G.*, 5th Dist. Guernsey No. 09-CA-25, 2010-Ohio-1461, ¶ 26. Juvenile Rule 2(F) defines the complaint as "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." R.C. 2151.27 and Juvenile Rule 10 require that a dependency complaint be filed "in the juvenile court of the county in which the child has a residence" or in which the dependency allegedly occurred. R.C. 2151.06 provides that a child has the same residence as her parents.

{¶11} Other courts have recognized that improper venue is a basis for dismissal of the complaint, because the "jurisdiction" of the juvenile court "rests on either the residence of the child in the county where the complaint was filed or a showing that the acts constituting neglect or dependency of the minor child occurred in that county. *State ex rel. Burchett v. Juvenile Court for Scioto Cty.*, 92 Ohio Law Abs. 357 (4th Dist.1962), citing *In re Belk*, 97 Ohio App. 114 (3d.Dist.1954) (relying on R.C. 2151.27 because the cases predated the Juvenile Rules); *see also In re Zobel*, 5th Dist. Tuscarawas No. 2007AP020012, 2007-Ohio-3355 (concluding that dismissal was not warranted because venue was proper in that county).

{¶12} This case clearly fell within the subject matter jurisdiction of the juvenile court because it involved allegations that Z.R. was a dependent child. *See* R.C. 2151.23(A)(1). We do

not agree, however, with the trial court's conclusion that the venue requirements set forth in Juvenile Rule 10 and R.C. 2151.27 did not affect its authority or "jurisdiction" to preside over this case. The term "jurisdiction" is "'a word of many, too many, meanings.'" *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 33, quoting *United States v. Vanness*, 85 F.3d 661, 663, fn. 2 (D.C.Cir.1996). In addition to subject-matter jurisdiction and personal jurisdiction, the Ohio Supreme Court has also recognized what it characterized as a "third category of jurisdiction":

> The term 'jurisdiction' is also used when referring to a court's exercise of its jurisdiction over a particular case. *See State v. Parker,* 95 Ohio St.3d 524, 2002–Ohio–2833, ¶ 20 (Cook, J., dissenting); *State v. Swiger*, 125 Ohio App.3d 456, 462 (9th Dist.1998). 'The third category of jurisdiction [i.e., jurisdiction over the particular case] encompasses the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction.'

*Pratts* at ¶ 12.

{¶13} Ohio courts have recognized several examples of the third category of jurisdiction, which have involved requirements of statutes or rules that impose constraints on the trial court's authority to exercise its jurisdiction over a specific case. For example, *Pratts* and *Swiger* involved the lack of "jurisdiction" of a single trial judge to determine guilt or impose sentence on a capital murder defendant because R.C. 2945.06 and R.C. 2931.03 require a three-judge panel if the defendant waives his right to a jury trial. Other cases in which courts have recognized this type of jurisdiction have likewise involved constraints on the trial court's authority imposed by specific statutes or rules. *See, e.g., In re L.S.*, 9th Dist. Summit No. 23523, 2007-Ohio-1583 (the requirements of Civ.R. 60(B) for reopening a final judgment); *State v. Franklin*, 8th Dist. Cuyahoga No. 81426, 2003-Ohio-2649 (the jury trial waiver requirements of R.C. 2945.05); *GMAC, L.L.C. v. Greene*, 10th Dist. Franklin No. 08AP-295, 2008-Ohio-4461 (requirements of the civil rules for reopening a final judgment and granting summary judgment);

*In re T.D.*, 12th Dist. Clinton No. CA2010-01-002, 2010-Ohio-6081 (the requirements of R.C. 2152.83(A)(1) for classifying a sexual offender).

{¶14} Although not explicitly recognizing the third category of jurisdiction, other appellate courts have applied similar reasoning to the venue requirement for filing an adoption petition in probate court. R.C. 3107.04 requires that a petition for adoption be filed in the probate court of the county in which the child was born or resides with his parents, where the petitioner resides or is stationed in military services, or in which the agency having the permanent custody of the person to be adopted is located. *See In re Adoption of G.T.V.*, 10th Dist. Franklin No. 11AP-617, 2011-Ohio-5367, ¶ 10-11; *In re Adoption of Murphy*, 53 Ohio App.3d 14 (6th Dist.1988); *In re Adoption of Labo*, 3d Dist. Shelby No. 17-86-5, 1987 WL 8154 (Mar. 16, 1987). Because the adoption petitions in each case had been filed in an improper county, dismissal of the case was appropriate. *Id*.

{¶15} In *Labo*, the court recognized that a county probate court has subject matter jurisdiction over all adoptions pursuant to R.C. 3107.02, but it emphasized that the method for "invoking [that] jurisdiction" must be by petition "and is available only in those counties meeting, for the particular case, the requirements [of R.C. 3107.04]." *Id.*, 1987 WL 8154 at *2-3. An action is not properly commenced unless the complaint is filed in a county that satisfies the requirements of the venue statute. *Id.* at *3.

{¶16} Mother's motion to dismiss the dependency complaint in this case raised a similar challenge to whether the trial court's jurisdiction was properly invoked in this case.[1] Specifically, she argued that the complaint failed to satisfy either of the prerequisites under R.C.

---

[1] Although lack of jurisdiction over the particular case must be challenged in a timely manner because it renders the judgment merely voidable, not void, Mother timely raised this challenge through her motion to dismiss the complaint. *See Pratts,* 102 Ohio St.3d 81, 2004-Ohio-1980, at ¶ 12; Juv.R. 22(C) and (D).

2151.27 for invoking the jurisdiction of the juvenile court in Summit County. At issue was whether CSB had alleged either that Z.R. resided in Summit County or that Mother had committed any acts in the county that could constitute abuse, neglect, or dependency toward Z.R. and, if not, whether the Summit County Juvenile Court lacked statutory authority to preside over this dependency case.

{¶17} Mother's argument that the complaint failed to allege that Z.R. resided in Summit County is well taken. Pursuant to R.C. 2151.06, a child has the same residence as her parents. Although Mother lived in Summit County during 2011, she moved to Cuyahoga County before Z.R. was born and CSB did not allege otherwise. In fact, CSB's complaint stated that Mother had been evicted from her home in Summit County and was staying with relatives in Cuyahoga County, and that CSB had observed that residence (which it apparently believed would be Z.R.'s home after her birth) and concluded that the home had inadequate supplies for a newborn baby. CSB did not suggest that Mother was only temporarily absent from Summit County or that she would return to the county to live. Moreover, the record further reflects that CSB and the trial court maintained a belief that Mother resided in Cuyahoga County, as the costs of educating Z.R. were later allocated to the Cleveland Metropolitan School District. *See* R.C. 2151.362; R.C. 3313.64(C)(2).

{¶18} Because CSB failed to allege that Z.R. resided in Summit County, R.C. 2151.27 allowed the action to be commenced in this county only if Z.R. was subjected to conduct in the county that could constitute abuse, neglect, or dependency. By authorizing the filing of an abuse, neglect, or dependency complaint in a county in which the child does not reside, the General Assembly recognized that children may be subjected to acts of abuse, neglect, and dependency at locations outside their homes and that those non-residential locations could be in

another county. Because immediate removal of the child from parental custody may be warranted, an action may be commenced in the non-residential county where the conduct occurred. *See, e.g.,* Juv.R. 6. That was not the situation in this case, however. Z.R. had not been exposed to any acts of abuse, neglect, or dependency in Summit County, as she had been born only one day earlier in Cuyahoga County and remained in a hospital there. Instead, CSB focused on Z.R.'s home environment, had she been released from the hospital into Mother's custody.

{¶19} CSB alleged that Z.R. was a dependent child under either R.C. 2151.04(C) or (D), which define a dependent child as one:

> (C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship; [or]

> (D) To whom both of the following apply:

> (1) The child is residing in a household in which a parent * * * committed an act that was the basis for an adjudication that a sibling of the child * * * is an abused, neglected, or dependent child.

> (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling * * * and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent[.]

{¶20} Under R.C. 2151.04(C), Z.R.'s "environment" that formed the basis of this complaint was Mother's home at that time, which was located in Cuyahoga County. CSB alleged that it had visited the Cuyahoga County home and found that it lacked adequate supplies for a newborn baby.

{¶21} Through its allegations under R.C. 2151.04(D), however, CSB argued that it had alleged that acts of dependency had occurred in Summit County. R.C. 2151.04(D) authorizes the removal of a newborn infant from her parent's custody before she is released from the hospital, based in part on the prior juvenile court history of the family. *See, e.g, In re D.B.*, 9th Dist. Medina Nos. 03CA0015-M and 03CA0018-M, 2003-Ohio-4526, ¶ 17. This anticipatory

removal is premised on the notion that, if the agency can demonstrate that the family's past problems continue to pose a threat to this child, it is not required to wait for the infant to be exposed to that environment. *Id.* CSB alleged that Z.R. was dependent under the terms of R.C. 2151.04(D) by pointing to past facts of the dependency and neglect cases of Mother's older children. Those facts were relevant to whether Z.R. could be adjudicated dependent under R.C. 2151.04(D), but they were not determinative. In addition to allegations about the adjudications of Z.R.'s siblings, the complaint was also required to allege that Z.R. "is residing in a household" with someone who committed the acts underlying the adjudications and that, because of those past circumstances, as well as "other [current] conditions in the household of the child," Z.R. is in danger of being similarly abused or neglected. R.C. 2151.04(D). Although the past adjudications of Z.R.'s siblings were relevant to dependency under R.C. 2151.04(D), the primary focus of whether Z.R. was a dependent child is on her household and whether she would similarly be at risk by living with Mother there. *See In re E.R.*, 9th Dist. Medina No. 05CA0108-M, 2006-Ohio-4816, ¶ 32; *In re W.C.*, 9th Dist. Summit No. 22356, 2005-Ohio-2968, ¶ 17.

CSB failed to allege that the current condition or household of Z.R. had any connection to Summit County. In fact, the allegations about the "household" of Z.R. were that, absent intervention by the court, Z.R. would have been released from the hospital into Mother's custody and resided with her in a home in Cuyahoga County, which CSB alleged was not adequately equipped for a newborn infant. As explained already, CSB made no allegations that Z.R.'s residence, home, or "household" was in Summit County or that it would ever be.

{¶22} Consequently, the complaint failed to allege a basis under R.C. 2151.27 to file this dependency case in Summit County. Given that the jurisdiction of the Summit County Juvenile Court was not properly invoked under the specific terms of R.C. 2151.27 and Juv.R. 10,

the trial court should have granted Mother's motion to dismiss the complaint. We must again emphasize that the trial court's authority in abuse, neglect, and dependency cases is strictly authorized by statute, including R.C. 2151.27. *See In re N.G*, 2012-Ohio-2825, at ¶ 10. This Court has found reversible error in other situations in which the trial court exceeded its statutory authority in dependency and neglect cases. *See, e.g.*, *In re A.P.*, 9th Dist. Medina No. 12CA0022-M, 2012-Ohio-3873 (trial court lacked authority to remove legal custody from the case plan); *In re I.S.*, 9th Dist. Summit No. 24763. 2009-Ohio-6432 (court lacked authority to modify legal custody order except as provided by R.C. 2151.42); *see also In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359 (trial court lacked statutory authority to place child in a PPLA).

{¶23} Although R.C. 2151.27 and Juv.R. 10 do not state that a dependency complaint must be dismissed if filed in the wrong county, we must presume that the General Assembly had reasons for enacting the specific requirements of R.C. 2151.27 that a case be commenced in the county where the child resides or has been subjected to acts of abuse, neglect, or dependency. *See* R.C. 1.47. This Court must also construe the requirements of R.C. 2151.27 in a manner that achieves a reasonable result, reading it within the context of the dependency and neglect statutory scheme, and considering the object sought to be attained. R.C. 1.47(C); R.C. 1.49(A), (B), and (F).

{¶24} Juv.R. 1 further mandates that the Juvenile Rules be interpreted and construed in a manner that ensures a fair hearing, enforces the constitutional rights of the parties, secures a simple and uniform procedure, and avoids unnecessary expense or delay. *See also* R.C. 2151.01. This Court has emphasized that a parent has a "fundamental right to care for and have custody of his or her child." *See e.g.*, *In re M.B*, 9th Dist. Summit No. 21760, 2004-Ohio-597, ¶ 6, quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). Due to the substantial nature of the right, parents

must be afforded "every procedural and substantive protection the law allows." *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991).

{¶25} We are not persuaded by the trial court's conclusion, and that of the Eleventh District Court of Appeals, that defective venue in this type of case can be cured by later transferring the case to the correct county. *See In re W.W.*, 190 Ohio App.3d 653, 2010-Ohio-5305, ¶ 25-28 (11th Dist.). To begin with, this rationale would allow an abuse, neglect, or dependency action to be commenced and proceed anywhere in the state, which would defeat the limiting venue language of Juvenile Rule 10 and R.C. 2151.27 and may undermine the reunification purposes of R.C. Chapter 2151.

{¶26} Moreover, Juvenile Rule 11 and R.C. 2151.271 provide that the trial court "may" transfer a case to the county where the child resides, which does not require that it do so. Thus, a case could be improperly filed and proceed all the way to permanent custody in a county that lacks the requisite connection to the child. Even if the trial court does exercise its discretion to transfer a case to the correct county, the transfer will not occur immediately and may not occur until several months after the action was commenced.

{¶27} Because the time the child spends in an agency's temporary custody may ultimately lead to termination of parental rights under the so-called "12 of 22" provision, it is essential that the complaint be filed in the correct county so the family receives "reasonable efforts" to work toward reunification from the beginning of the case. *See* R.C. 2151.414(B)(1)(d). As the Ohio Supreme Court stressed in *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 23, "in light of the purpose of R.C. Chapter 2151 and a court's obligation to provide parents with procedural protections in permanent custody proceedings," the trial court lacks authority to entertain a motion for permanent custody on "12 of 22" grounds until the

agency has afforded the parents "the full 12–month period to work toward reunification[.]" It is only reasonable to also conclude, as set forth above, that those "reasonable" reunification efforts must take place in an appropriate county.

{¶28} Consequently, this Court cannot conclude that the transfer provisions of Juv.R. 11 and R.C. 2151.271 were intended to address complaints that fail to comply with the requirements of R.C. 2151.27. Instead, those discretionary transfer provisions are more reasonably interpreted to authorize a transfer to the child's county of residence after the juvenile court's jurisdiction has been properly invoked. In other words, if a complaint is filed in a county where alleged acts of abuse, dependency, or neglect occurred, and the child resides in another county, the court has discretion to transfer the case to the child's county of residence.

{¶29} Because the complaint in this case failed to comply with the requirements of Juvenile Rule 10 and R.C. 2151.27 for invoking the jurisdiction of the Summit County Juvenile Court, and Mother timely filed a motion to dismiss on that basis, the trial court erred in failing to dismiss the complaint. Mother's first assignment of error is sustained.

## REMAINING ASSIGNMENTS OF ERROR

{¶30} Mother's five additional assignments of error, which challenge the commencement of this case on different grounds and also raise defects in the adjudicatory and dispositional proceedings, have been rendered moot and will not be addressed.

## III.

{¶31} Mother's first assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

BELFANCE, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶32} I concur in the judgment of the main opinion because the trial court erred in failing to dismiss the case pursuant to Mother's motion.

{¶33} The main opinion correctly notes that "[t]he trial court's authority in dependency and neglect cases is strictly governed by a comprehensive statutory scheme set forth in R.C. Chapter 2151." *In re N.G*, 9th Dist. Lorain No. 12 CA010143, 2012-Ohio-2825, ¶ 10, citing *In re I.S.,* 9th Dist. Summit No. 24763, 2009-Ohio-6432, ¶ 10. R.C. 2151.27(A)(1) states in part

that, "any person having knowledge of a child who appears * * * to be an [] abused, neglected, or dependent child may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement or in which the * * * abuse, neglect, or dependency allegedly occurred."

{¶34} In the instant matter, the trial court's jurisdiction was never properly invoked because the complaint was not filed in accordance with the requirements of R.C. 2151.27(A)(1), namely, it was not filed in the county where the alleged act of dependency, neglect or abuse occurred or the county where the child has a residence. *See In re D.G.,* 5th Dist. Guernsey No. 09-CA-25, 2010-Ohio-1461, ¶ 26 ("The appropriate way to invoke the jurisdiction of the juvenile court is by the filing of a complaint."). In my view, the trial court's comparison of R.C. 2151.27 to the ordinary venue provisions of Civ.R. 3 is misplaced. R.C. 2151.27 is not a civil rule of procedure; rather, it is a statute specifically identifying the prerequisites to the filing of a juvenile complaint. Moreover, the trial court could not properly transfer the matter pursuant to Juv.R. 11 because the trial court's jurisdiction over the case was not properly invoked. Juv.R 11(A) states that

> If the child resides in a county of this state and the proceeding is commenced in a court of another county, that court, on its own motion or a motion of a party, may transfer the proceeding to the county of the child's residence upon the filing of the complaint or after the adjudicatory or dispositional hearing for such further proceeding as required. The court of the child's residence shall then proceed as if the original complaint had been filed in that court. Transfer may also be made if the residence of the child changes.

Concluding that Juv.R. 11(A) allows transfer even in cases that fail to comply with the filing requirements of R.C. 2151.27(A)(1) would essentially negate those statutory requirements. Accordingly, it is only logical to conclude that inherent within Juv.R. 11(A) is the notion that only cases properly filed pursuant to R.C. 2151.27 can be transferred.

**{¶35}** In light of the foregoing, I concur in the main opinion's judgment.

CARR, J.
<u>DISSENTING.</u>

**{¶36}** I respectfully dissent. As an initial matter, I do not agree that the complaint was not properly filed in Summit County. Mother's acts which formed the basis for the removal and adjudications of her older children as neglected and dependent occurred in Summit County. Moreover, those adjudications formed the basis for Summit County CSB's allegations that Z.R. was a dependent child under R.C. 2151.04(D). *See In re B.B.*, 3d Dist. Defiance No. 4-10-17, 2012-Ohio-2695, ¶ 28-30 (concluding that venue was proper where the child's siblings had earlier been removed in the same county). Consequently, because the complaint alleged dependency based on prior acts that occurred in Summit County, I believe that venue was proper here. R.C. 2151.27(A)(1) and Juv.R. 10.

**{¶37}** Moreover, even if I were to agree that venue was improper in this case, I disagree with the majority's conclusion that the juvenile court erred by denying Mother's motion to dismiss the complaint. Although the majority strives to emphasize that the issue implicated is not one of jurisdiction, but rather of venue, it nevertheless commingles the two concepts and reaches the ultimate conclusion that the juvenile court's jurisdiction is not properly invoked unless the complaint has been filed in the proper venue. In support, the majority relies in part on case law from 1962 and 1954, long before the promulgation of the Ohio Rules of Juvenile Procedure in 1972. *See State ex rel. Burchett v. Juvenile Court of Scioto Cty.*, 92 Ohio Law Abs. 357 (4th Dist. 1962), citing *In re Belk*, 97 Ohio App. 114 (3d Dist.1954) (cited for the proposition that improper venue constitutes grounds for dismissal of a complaint because the juvenile court's "jurisdiction * * * rests on either the residence of the child in the county where

the complaint was filed or a showing that the acts constituting neglect or dependency of the minor child occurred in that county."). More recent cases, however, have routinely distinguished venue from jurisdiction in the juvenile context to hold that dismissal of the agency's complaint was not the proper case management mechanism when the complaint was filed in a county other than where the child was residing or where the acts giving rise to the allegation of dependency, neglect, or abuse occurred.

{¶38} R.C. 2151.27(A)(1) permits any person with knowledge to file a complaint alleging dependency, neglect, or abuse "in the juvenile court of the county in which the child has a residence or legal settlement or in which the  * * * abuse, neglect, or dependency allegedly occurred."  Juv.R. 10(A) mirrors this language.  Juv.R. 11 sets out the proper procedural mechanism regarding cases wherein the complaint was filed in an Ohio county other than as provided in R.C. 2151.27(A)(1) and Juv.R. 10(A).  Juv.R. 11(A) provides:

> If the child resides in a county of this state and the proceeding is commenced in a court of another county, that court, on its own motion or a motion of a party, *may* transfer the proceeding to the county of the child's residence upon the filing of the complaint or after the adjudicatory or dispositional hearing for such further proceeding as required.  The court of the child's residence shall then proceed as if the original complaint had been filed in that court.  Transfer may also be made if the residence of the child changes.

{¶39} Juv.R. 11(B) addresses the lone situation (not including cases implicating removal to the adult court) under which transfer is required.  Specifically, "[t]he proceedings * * * shall be so transferred if other proceedings involving the child are pending in the juvenile court of the county of the child's residence."

{¶40} Recent case law bears out the interpretation that (1) venue does not impact the jurisdiction or authority of the juvenile court to proceed with a dependency, neglect, or abuse action; and (2) that transfer of the case based on venue is discretionary.  *In re B.B.*, 2012-Ohio-

2695 at ¶ 20-21; *In re W.W.*, 190 Ohio App.3d 653, 2010-Ohio-5305, ¶ 23 (11th Dist.). *See also, Squires v. Squires*, 12 Ohio App.3d 138, 140 (12th Dist.1983). Moreover, recent cases have rejected the notion that dismissal of a juvenile complaint on the basis of improper venue is appropriate. *Witt v. Walker*, 2d Dist. Clark No. 2012-CA-58, 2013-Ohio-714, ¶ 38 (holding that "[Juv.R. 11(A)] does not provide for the dismissal of a case for improper venue."); *In re W.W.* at ¶ 21. The Eleventh District, in *In re W.W.*, developed clear and concise reasoning for this proposition. That court explained:

> Venue is the legal term for the proper place for a trial to occur. Venue should not be confused with jurisdiction as they are distinct legal concepts. Venue embodies the geographic division where a cause can be tried. Jurisdiction, on the other hand, relates to the court's power to hear and determine a case on its merits. Venue signifies the geographic division by county where a case should be tried. Venue is a procedural matter concerned with choosing a convenient forum and raises no jurisdictional implications.

(Internal citations omitted). *Id.* at ¶ 25.

{¶41} I agree. This is not a criminal matter in which venue constitutes an essential element of the crime which the State must prove beyond a reasonable doubt. Accordingly, dismissal of this case would not be warranted.

{¶42} The majority construes R.C. 2151.27 and Juv.R. 10 as imposing mandatory limitations on where these cases may be heard out of necessity to "achieve[] a reasonable result[.]" Although I understand the majority's concerns, no "reasonable result" can be achieved when an agency without first-hand knowledge and understanding of the circumstances of an alleged abused, neglected, or dependent child is unable to adequately prosecute the child's adjudication. Or worse yet, the result could be catastrophic were a subject child to fall through the cracks because the properly venued county agency failed for some reason to investigate or file a complaint after the original complaint is dismissed and the child is returned home.

{¶43} It is reasonable to believe that the agency that has investigated and developed a history with the family would be in the best position to use the reasonable efforts required to attempt to effect reunification of the child with the parents. In the event that the complaining agency was as a matter of practicality too geographically remote to use the necessary and proper reasonable efforts, the parents could raise that issue on appeal. *See In re Kimble*, 7th Dist. Harrison No. 99 517 CA, 2002-Ohio-2409, ¶ 17 (recognizing that a party retains an adequate remedy by way of a writ of procedendo to compel the juvenile court to act within certain prescribed statutory time limits, so that jurisdictional issues and dismissal are not implicated). It is axiomatic, however, that the complaining agency would be in the best position to prosecute the adjudication, as the evidence relevant to those claims must relate to the situation and circumstances as they existed prior to and at the time of the filing of the complaint, not after the complaint has been filed. That evidence would likely have some significant nexus with the county in which the agency is located because a county agency uses its limited resources to investigate issues within or with a significant connection to its home county. I cannot imagine a situation in which a county child protection agency would detract from its ability to investigate issues regarding children within its county by seeking out issues regarding children with no contacts to its territory. In the event that that were to happen, the parent could request, or the juvenile court could sua sponte order, transfer of the case to a county whose agency was in a position to effectively investigate any allegations of dependency, neglect, or abuse.

{¶44} In this case, Mother had been living in Summit County and left only after being evicted from her home. There were active cases involving her other children pending in the Summit County Juvenile Court at the time she gave birth to Z.R. in Cuyahoga County. Summit County CSB was well aware of the issues giving rise to the concerns about the care Mother

could provide for her children. The agency, which was already expending its resources to investigate and work with this family, investigated the home in Cuyahoga County where Mother was to return with the infant and found it to be unsatisfactory. Accordingly, the "reasonable result" in this case was for the juvenile court to consider the complaint that CSB filed in Summit County as a matter of practicality and convenience. If the agency thereafter could not develop a case plan that would adequately utilize reasonable efforts to effect reunification, any party or the court could propose transfer of the case to a more proper venue. If Mother were to request transfer and the juvenile court denied it, she could raise that issue on direct appeal from the adjudication or final disposition.

{¶45} For the reasons articulated above, I would conclude that the juvenile court properly denied Mother's motion to dismiss CSB's complaint involving Z.R. I would overrule Mother's first assignment of error and consider her remaining assignments of error.

APPEARANCES:

DENISE FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

TONY PAXTON, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.